**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.B.**

**No. 21-0434** (Fayette County 20-JA-143)

**MEMORANDUM DECISION**

Petitioner Mother T.B., by counsel Nancy S. Fraley, appeals the Circuit Court of Fayette County's April 26, 2021, order terminating her parental rights to C.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Vickie L. Hylton, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner abused drugs and failed to ensure the child attended school. Specifically, the DHHR alleged that it received a referral that the child had not regularly attended school despite being enrolled at the beginning of the school year. On a subsequent day when the child appeared at school, a Child Protective Services ("CPS") worker spoke to the then-seven-year-old child, who reported that his parents often argued because they do not have money for their "stuff" and that he was frequently hungry while at home.[2] The child further reported that the parents "sleep a lot and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The child referred to petitioner's boyfriend as his father. However, the identity of the child's father is unknown.

when they pass out there is no waking them." The CPS worker proceeded to petitioner's home, but no one answered the door. Neighbors informed the CPS worker that petitioner and her boyfriend abuse drugs and had previously used "Narcan on each other." After attempting to contact petitioner multiple times, the CPS worker sought assistance from law enforcement. Upon gaining access to petitioner's home, the CPS worker observed the interior to be in deplorable condition with drug paraphernalia scattered throughout the home. The CPS worker observed a methamphetamine pipe, burnt foil, marijuana bowls, and other paraphernalia lying within reach of the child, including in the room in which he slept. Petitioner denied abusing any substance other than marijuana and claimed the burnt foil was from "old usage." Based on the foregoing, the DHHR alleged that petitioner had a substance abuse problem that impaired her ability to properly care for the child and exposed the child to deplorable living conditions.

The circuit court held a preliminary hearing shortly thereafter. Petitioner waived her preliminary hearing, and the circuit court granted her supervised visitation with the child pending her ability to submit to two consecutive negative drug screens. Following the hearing, petitioner tested positive for methamphetamine, amphetamine, and fentanyl.

The circuit court held an adjudicatory hearing in December of 2020 wherein petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and ordered her to submit to a psychological/substance abuse evaluation. At a multidisciplinary team ("MDT") meeting held later that month, petitioner failed to appear. The parties reported that petitioner was not complying with services, and the DHHR and guardian noted their intention to oppose an improvement period if petitioner did not begin complying soon. During a January of 2020 MDT meeting, a service provider stated that she made six attempts to drug screen petitioner but that petitioner would not respond to her attempts to contact her in person or via phone call.

The circuit court held a hearing in February of 2021; petitioner failed to attend but was represented by counsel. According to the guardian, counsel for petitioner advised the court that she had informed her client that she needed to enter into a drug rehabilitation program. Counsel admitted that she was unsure of whether petitioner had entered such a program. The circuit court noted that there were numerous attempts by CPS workers, service providers, and counsel to contact petitioner but to no avail. Petitioner's counsel moved the circuit court to grant petitioner an improvement period, which the circuit court denied, and the matter was set for disposition.

The circuit court held a dispositional hearing in April of 2021. Petitioner once again failed to appear but was represented by counsel. Given petitioner's absence, the circuit court permitted the DHHR to proffer an argument in support of the termination of petitioner's parental rights. The circuit court found that petitioner failed to submit to a psychological/substance abuse evaluation as ordered, failed to appear at any hearings following the adjudicatory hearing, and failed to avail herself of services offered by the DHHR.[3] Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct

_____

[3]The circuit court noted that petitioner failed to appear at one hearing in March of 2021; however, it appeared to excuse that absence as petitioner was hospitalized at that time.

the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the circuit court's April 26, 2021, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period. Petitioner questions how she could have met her burden of demonstrating that she was entitled to an improvement period when "no services or means to comply" were put in place. Petitioner argues that the CPS worker and MDT members never had a "sit down conversation" with her given that "all MDT meetings except the last one were held telephonically." Petitioner contends that granting her an improvement period would not have caused a delay in the child's permanency, as he was not placed in an adoptive placement until March of 2021. Although not clear, petitioner also seems to argue that she was prejudiced by continuances in the matter and a lack of face-to-face interaction due to the COVID-19 pandemic. According to petitioner, the time frames set forth in the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings encourage "[a]dult [r]espondents to ma[k]e meaningful changes quickly" and that due to the delays, along with the constraints of the COVID-19 pandemic and a lack of consistent, face-to-face interactions with caseworkers, she "did not benefit from any . . . interaction with those charged with assisting her in correcting the Abuse/Neglect to which she stipulated."

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d

---

[4]The unknown father's parental rights were also terminated below. The permanency plan for the child is adoption by his foster family.

542, 551 (2000)). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

We find that petitioner failed to demonstrate that she was likely to fully participate in an improvement period. Petitioner contends that she was unable to meet her burden of demonstrating that she was likely to participate with services because none were provided to her. However, the record demonstrates that CPS workers and service providers attempted to contact petitioner on multiple occasions, but that petitioner refused to respond. In fact, petitioner failed to maintain contact with either the DHHR or her attorney and failed to participate in multiple hearings and MDT meetings throughout the proceedings. Further, despite having been advised on multiple occasions that she could visit with the child once she submitted two negative screens, the record is devoid of evidence that petitioner submitted to any drug screens during the entirety of the case. And on the single occasion that she did screen following the preliminary hearing, she tested positive for methamphetamine, amphetamine, and fentanyl. This Court has previously held that "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996). Petitioner also failed to attend her scheduled psychological/substance abuse evaluation and failed to enter a drug rehabilitation program as instructed. Lastly, we find no merit to petitioner's argument that she was somehow prejudiced by any delays in the proceedings or the use of remote technology during the proceedings. Petitioner's counsel requested at least one of the continuances, and petitioner refused to appear at several hearings and MDT meetings; further, she did not raise any issues with regard to the virtual hearings. Moreover, CPS workers and service providers visited petitioner's house on numerous occasions, but she refused to answer the door. Accordingly, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Petitioner next argues that the circuit court erred in terminating her parental rights. Petitioner argues that the circumstances of her case did not require termination under West Virginia Code § 49-4-605(a).[5] Petitioner contends that the primary reason for the termination of her parental

---

[5]West Virginia Code § 49-4-605(a) provides as follows:

(a) Except as provided in § 49-4-605(b) of this code, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:

(1) If a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home;

(2) If a court has determined the child is abandoned, tortured, sexually abused, or chronically abused;

(continued . . .)

rights was her failure to participate in the proceedings after the adjudicatory hearing. Petitioner argues that she was in the proper mind-set to participate immediately following the child's removal from her care, but a CPS worker was not assigned until later in the proceedings and no service providers were put in place. Petitioner states that "[t]ime passed and . . . [p]etitioner became ill and hopeless." According to petitioner, there is no documentation that the DHHR attempted to keep in touch with her or that service providers attempted to contact her until after the adjudicatory hearing due to the pandemic-related protections in place at that time.

While the DHHR was not required to seek termination under the parameters set forth in West Virginia Code §49-4-605(a) given the facts of this case, we note that West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The evidence as set forth above supports the circuit court's decision to terminate petitioner's parental rights. Here, petitioner absented herself from the majority of the proceedings below and failed to maintain contact with her attorney or the DHHR so that services could be implemented. While petitioner claims that there is no documentation that a CPS worker or service providers had been assigned prior to her adjudicatory hearing, the record indicates that, following the preliminary hearing, she was granted visitation contingent upon her ability to submit negative drug screens but failed to do so. Indeed, petitioner consistently failed to submit to drug screens throughout the entirety of the proceedings. Moreover, the record demonstrates that CPS workers

---

(3) If a court has determined the parent has committed murder or voluntary manslaughter of another of his or her children, another child in the household, or the other parent of his or her children; has attempted or conspired to commit murder or voluntary manslaughter or has been an accessory before or after the fact of either crime; has committed unlawful or malicious wounding resulting in serious bodily injury to the child or to another of his or her children, another child in the household or to the other parent of his or her children; has committed sexual assault or sexual abuse of the child, the child's other parent, guardian or custodian, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent; or the parental rights of the parent to another child have been terminated involuntarily; or

(4) If a parent whose child has been removed from the parent's care, custody, and control by an order of removal voluntarily fails to have contact or attempt to have contact with the child for a period of 18 consecutive months: Provided, That failure to have, or attempt to have, contact due to being incarcerated, being in a medical or drug treatment or recovery facility, or being on active military duty shall not be considered voluntary behavior.

and service providers attempted to contact petitioner on multiple occasions, both in person and via phone, and that she refused to respond to their attempts to set up services. As of the date of the dispositional hearing, petitioner had failed to maintain contact with the DHHR, failed to attend her psychological evaluation, failed to drug screen, and failed to attend several hearings and MDT meetings. Based on the foregoing, it is clear that petitioner was unable to solve the problems of abuse or neglect on her own or with the help of the DHHR and, thus, termination of her parental rights was not error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 26, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton